Ruth STEINBERG, M.D., Plaintiff,

v.

OBSTETRICS–GYNECOLOGICAL & INFERTILITY GROUP, P.C., et al, Defendants.

No. 3:01 CV 02050 GLG.

United States District Court, D. Connecticut.

March 27, 2003.

Robert K. Ciulla, Paul E. Monaghan, Jr., Ciulla & Donofrio, North Haven, CT, for Plaintiff.

Kevin C. Shea, Clendenen & Shea, William H. Clendenen, Jr., New Haven, CT, for Defendants.

### *MEMORANDUM DECISION*

GOETTEL, District Judge.

## I BACKGROUND/FACTS

The defendants in this case, Obstetrics–Gynecological & Infertility Group, P.C., Lawrence Wartel, M.D. and Joel S. Silidker, M.D. (Group), move for summary judgment **[Doc. 9]** on count one of the plaintiff's complaint, which is based on the Employee Retirement Income Security Act (ERISA). The plaintiff, Ruth Steinberg, M.D., alleges that the defendants failed to distribute to her the proper amount of funds to which she claims she is entitled to under the Group's Profit Sharing Plan (Plan). The defendants argue that because the plaintiff failed to exhaust the administrative remedies set forth in the Plan, they are entitled to summary judgment. Further, the defen-

dants have filed a motion to strike [**Doc. 28**], pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, one of the plaintiff's documents set forth in her opposition to the defendants' motion for summary judgment. The following facts are relevant to our disposition of the defendants' motions.

The plaintiff joined the Group in 1986, where she was employed for seventeen years. She was eligible and took part in the Group's Plan, which was established to provide retirement and other incidental benefits to certain employees. On August 31, 2000, following a negotiated agreement and general release from the Group, the plaintiff's employment terminated.

After her departure, the plaintiff made a claim for benefits pursuant to section 8.06 of the Plan. Therein lies the crux of this dispute; the plaintiff contends that she is entitled to receive a distribution $757,766.23, while the defendants claim she is entitled to only $600,000. The defendants have filed a motion for summary judgment claiming that the plaintiff cannot bring this lawsuit in federal court because she failed to exhaust the administrative remedies under the Plan, as the Second Circuit requires for ERISA claims. In her opposition to that motion, the plaintiff asserts that she has exhausted such remedies. Alternatively, the plaintiff argues that it would have been futile to proceed further with such remedies and proffers, in particular, one document supporting that argument. The defendants have filed a motion to strike that document, which we address now.

## II. MOTION TO STRIKE

■ The defendants' motion to strike challenges the admissibility of a September 3, 2001, letter (Letter) from the plaintiff's then attorney, Clarin S. Schwartz, to her future and present attorney, Robert Ciulla. The defendants argue, *inter alia,* that the Letter is inadmissible hearsay and should not be considered by this Court in determining their motion for summary judgment. We agree with the defendants that the Letter constitutes hearsay, but disagree that it is not admissible under an exception to the general exclusionary hearsay rule.

The following additional facts are relevant here. Attorney Schwartz represented the plaintiff at the outset of this matter. After several written correspondences and telephone calls between her and Plan Administrators, she believed that the matter could be resolved only through litigation. As a result, the Letter informed attorney Ciulla that litigation seemed imminent and she alluded to his possible representation of the plaintiff. Attorney Schwartz informed him further that she was not admitted to practice law in Connecticut and that time constraints, as well as her lack of litigation skills, rendered it impractical for her to continue representing the plaintiff. The Letter contains a description of her interactions with Plan Administrators, which support her belief in the futility of proceeding further with the administrative process, as well as her assessment of the relevant Plan provisions. Sadly, attorney Schwartz lost her life during the cowardly attacks on the World Trade Center. The defendants seek now to have the Letter stricken as inadmissible hearsay in this Court's determination of the defendants' motion for summary judgment.

Hearsay is an out of court assertion, other than one made by the declarant while testifying at the trial or hearing, introduced in court to prove the truth of the matter asserted. *See* Fed.R.Evid. 801(c); *Riisna v. American Broadcasting Companies, Inc.,* 219 F.Supp.2d 568, 572 (S.D.N.Y.2002). Generally, hearsay evidence is inadmissible. *See* Fed.R.Evid.

802; *Rosenfeld v. Basquiat,* 78 F.3d 84, 89 (2d Cir.1996). To be admissible, therefore, alleged hearsay evidence must be defined as non-hearsay or fall within one of the accepted exceptions to the general exclusionary rule. *See* Rules 802, 803, 804 and 807, Fed.R.Evid.

■ The plaintiff's first response to the defendants' challenge is procedural. She argues that Rule 12(f) of the Federal Rules of Civil Procedure is not a proper basis for their motion to strike the Letter. The plaintiff's argument in this regard is summarily rejected because a Rule 12(f) motion to strike hearsay evidence in a party's opposition to summary judgment is a proper method for challenging such evidence. *See In re Dual–Deck Video Cassette Recorder Antitrust Litigation,* Nos. MDL–765, CIV 87–987, 1990 WL 126500 at *34 (D.Ariz. July 26, 1990) (recognizing motion to strike as proper vehicle for evaluating objectionable hearsay evidence in opposition papers to summary judgment motion); *see also Jeannie Ferrell v. Masland Carpets, Inc.,* 97 F.Supp.2d 1114, 1119 (S.D.Ala.2000); *Owens–Corning Fiberglas Corp. v. U.S. Air,* 853 F.Supp. 656, 663 (E.D.N.Y.1994).

■ Additionally, the plaintiff asserts two substantive arguments. First, she claims that the Letter is admissible as a recorded recollection under Federal Rule of Evidence 803(5). This argument borders on frivolous because the law clearly states that "[a] necessary predicate of this Rule ... is that there be a 'witness' with an insufficient recollection." *Jacobson v. Deutsche Bank, A.G.,* 206 F.Supp.2d 590, 597 (S.D.N.Y.2002) (citation omitted); *see* Fed.R.Evid. 803(5); Fed.R.Civ.P. 11(b)(11). That is not the case here.

The plaintiff's second substantive argument is that the Letter falls properly within the residual exception to the hearsay rule. Federal Rule of Evidence 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

■ In evaluating whether hearsay evidence is admissible under this Rule, it must satisfy the five requirements of trustworthiness, materiality, probative importance, the interests of justice and notice. *Parsons v. Honeywell, Inc.,* 929 F.2d 901, 907 (2d Cir.1991). These five indicia of reliability are to be examined to see whether the four classes of risk peculiar to hearsay evidence, which are insincerity, faulty perception, faulty memory and faulty narration, are minimized. *See Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 232 (2d Cir.1999). Hearsay statements, however, "need not be free from all four categories of risk to be admitted under Rule 807." *Id.* at 233. In other words, to allow the Letter into evidence under Rule 807, the Court must evaluate whether the statements regarding attorney Schwartz's

belief that it would have been futile to proceed farther with the administrative process possess a reliability commensurate with that found in other statements that are admitted under exceptions to the hearsay rule. *Id.* In making this determination, we are mindful that this exception is to be invoked "very rarely, and only in exceptional circumstances." *Parsons,* 929 F.2d at 907.

The defendants argue that the Letter cannot be admitted because it lacks circumstantial guarantees of trustworthiness for several reasons. They claim that attorney Schwartz (1) had a personal interest in the case, (2) wrote the Letter as "an advocacy piece" in an effort to persuade another attorney to take the case and (3) made statements that were neither corroborated nor made under oath. We disagree and find the Letter admissible in its entirety pursuant to Rule 807.[1]

The evidence must first be material. In this case, not only is the evidence material, it is crucial to the dispute at hand. As the plaintiff's representative, attorney Schwartz assumed the primary responsibility of dealing with Plan Administrators. Her understanding of the matter is paramount to the question of futility, which may become the primary issue in this case if it found later that the plaintiff failed to exhaust her administrative remedies.

The evidence must also be trustworthy. We look at the circumstances under which attorney Schwartz wrote the Letter to attorney Ciulla. *See Pfizer,* 189 F.3d at 232, 233; *United States v. Iaconetti,* 406 F.Supp. 554, 559 (E.D.N.Y.1976). As attorney Schwartz stated, the purpose of the Letter was to put into perspective documents she enclosed with it. Letter at 1. She also described her interactions with

Plan Administrators and her conclusions concerning the case to that point, as well as the relevant Plan provisions upon which she drew those conclusions. Contrary to the defendants' assertion, the Letter cannot be described fairly as an "advocacy piece;" it was more of an explanatory piece. It reflected her reasoning upon which she based her conclusions and impressions. While it is true that attorney Schwartz had a personal interest and an obligation to advocate for her client, it does not rise to the level of personal interest that would cause this Letter to lack trustworthiness. This is evidenced by the fact that she was providing merely a description of the case, accompanied by her conclusions and impressions based on the relevant facts, for another attorney who was preparing to represent the plaintiff in the matter. In fact, it was necessary for her to communicate this information to attorney Ciulla if she was to accurately describe the case to him so that he could adequately represent the plaintiff; this seems to mitigate the risks of insincerity, faulty memory and faulty narration. *See Iaconetti,* 406 F.Supp. at 559. Under these circumstances, we see no reason why attorney Schwartz would have been motivated to fabricate or convey any inaccurate information to attorney Ciulla and, therefore, find the Letter to satisfy the trustworthy requirement. *See In re Columbia Securities Litigation,* 155 F.R.D. 466, 475 (S.D.N.Y.1994) (stating trial court has broad discretion in assessing trustworthiness of hearsay evidence).

Rule 807 requires further that "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure

---

1. The defendants also claim that the letter contains inadmissible statements of hearsay within hearsay. *See* Fed.R.Evid. 805. We will address those statements separately following the present discussion.

through reasonable efforts." Fed.R.Evid. 807. Attorney Schwartz's statements describing her representation of the plaintiff and her interactions with Plan Administrators constitute the most probative evidence available to the plaintiff regarding her futility argument. The Letter is highly probative of where the parties stood in the matter and illuminate her efforts and responses thereto to that point. Though the Letter is not the only evidence suggesting that the plaintiff's availment to the administrative process set forth in the Plan would have been futile, it is clearly the strongest and most probative on the matter; it was attorney Schwartz's responsibility to discuss the contested issues with Plan Administrators and, as the plaintiff's representative, she was in the best position to most accurately describe the plaintiff's position at that time. Consequently, we find the Letter to satisfy the probative importance requirement. *See Id.* at 475 (stating trial court has broad discretion in assessing probative importance of hearsay evidence).

For the reasons stated above, we do not see how the interests of justice would be served by excluding the Letter. *See National Western Life Ins. Co. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 213 F.Supp.2d 331, 343 (S.D.N.Y.2002) (concluding that interests of justice would not be served if evidence excluded in light of its satisfaction of indicia of reliability requirements); *Robinson v. Shapiro,* 646 F.2d 734, 743 (2d Cir.1981) (stating that interests of justice requirement commended to the sound discretion of the trial judge).

Finally, there is no dispute that the defendants received adequate notice of the plaintiff's intent to seek to have the Letter admitted into evidence because it was included in her opposition to the defendants' motion for summary judgment, and it is

the basis of the defendants' motion to strike. Having evaluated and found the Letter to be admissible under Rule 807, we address now the defendants' claim that the Letter contains statements of inadmissible hearsay within hearsay.

"Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule." Fed.R.Evid. 805.

■ The first hearsay within hearsay statement in the Letter occurs when attorney Schwartz stated, "Mr. Donato said he just learned about the issue [in dispute] and would spend the time I was away [on vacation] to learn the facts" of her claim. Letter at 2. She continued by explaining how attorney Donato planned to obtain ERISA advice from his partner's cousin, attorney Jeffery Mamorsky. Attorney Mamorsky telephoned attorney Schwartz with attorney Donato on the line, which led to the second hearsay within hearsay statement. Attorney Schwartz stated that attorney Mamorsky informed her that she "did not know what [she] was talking about and that there was no way the Plan would pay [the plaintiff] the amount she believes is due her because that would hurt the participants who remain in the plan." *Id.*

We find that these statements fall properly within the residual exception of Rule 807 for substantially the same reasons discussed previously. We do not see, based on the circumstances surrounding attorney Schwartz's composition of the Letter, what would have motivated her to fabricate or exaggerate what was said to her during her conversations with attorney Donato and attorney Mamorsky. Consequently, they possess the requisite circumstantial guarantees of trustworthiness that act to minimize, at the least, three of the four classes of risks peculiar to this type of

evidence namely, insincerity, faulty memory and faulty narration.

For all of the reasons discussed previously, we find that the Letter is admissible under Federal Rule of Evidence 807 in its entirety. In so finding, we are mindful that this exception should be invoked sparingly and on only rare occasions, but find this to be such an occasion.

 The defendants argue further that the Letter is inadmissible under Federal Rule of Evidence 408 because attorney Schwartz wrote the letter for purpose of settlement negotiations. Rule 408 bars offers of settlement and the admission of statements and conduct made "in the course of compromise negotiations." *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2d Cir.1997). We find that the Letter was not made in the course of settlement negotiations. At no time did the communications between the parties reflect their willingness to settle the dispute before the commencement of legal action. Through such communications, each side asserted the correctness of their respective positions and did not indicate any desire to compromise. This is evinced by attorney Mamorsky's response to attorney Schwartz's claim, as well as attorney Schwartz's statement that she believed Plan Administrators were "wrong and that case law supports her position." Letter at 3. The Letter, therefore, is not to be excluded under Rule 408. *See S & S Tobacco & Candy Co., Inc. v. Stop & Shop Companies, Inc.*, 107 F.3d 4, 1997 WL 35327, *3 (2d Cir.1997) (noting District Court has broad discretion in determining to admit evidence under Rule 408). Having disposed of the defendants' motion to strike, we address now the defendants' motion for summary judgment.[2]

2. The defendants' remaining arguments regarding the admissibility of the Letter are summarily rejected because they are without merit.

## III. SUMMARY JUDGMENT MOTION

The standard for granting a motion for summary judgment is well established.

A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of establishing that there is no genuine factual dispute rests with the moving party. In ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of plaintiff, as the non-moving party. Thus, [o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper.

*Sheltry v. Unum Life Ins. Co. of America*, 247 F.Supp.2d 169, 171 (D.Conn.2003) (citations omitted; internal quotation marks omitted).

 Moreover, the plaintiff was required to exhaust all administrative remedies set forth in the Plan because the Second Circuit "has recognized the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993). While ERISA in and of itself does not provide for carrier or plan review, it requires all benefits plans to provide for such review. *See* 29 U.S.C. § 1133. Consequently, exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy. *See Kennedy*, 989 F.2d at 594.

Section 8.06 of the Plan, entitled Claims For Benefits, provides in relevant part:

Claims for benefits must be filed with the Plan Administrator and will be disposed of as follows: (a) Denial of Claim: Written notice of the denial of a claim will be furnished to the claimant within 90 days after the application is filed. Such notice will set forth, in a manner calculated to be understood by the claimant, specific reasons for such denial, specific references to the applicable Plan provisions on which the denial is based, a description of any additional material necessary for the claimant to perfect his claim, an explanation of why such material is necessary, and an explanation of the Plan's review procedures. (b) Review Procedure: Within 60 days after a claimant receives a denial of his claim, such claimant may make a written request to the Administrator for a review by the Administrator of such denial. The request must set forth all of the grounds upon which it is based, supporting facts, and any other matters the claimant deems pertinent.... The Administrator must act upon a request for a review within 60 days after receipt thereof.... If the Administrator confirms the denial in whole or in part, written notice will be furnished to the claimant. Such notice will set forth, in a manner calculated to be understood by the claimant, specific reasons for such denial and specific references to the applicable Plan provisions on which the denial is based. A claimant must exhaust all remedies set forth in the Plan prior to seeking remedy through actions of the courts and/or government bodies.

 Having set forth the legal principles that govern our resolution of the defendants' motion for summary judgment, we reach now the merits of their claim to see if they have satisfied their burden of showing that no genuine issue of material fact exists, and conclude that they have not.

The defendants argue that the plaintiff failed to exhaust her administrative remedies as set forth in Section 8.06 of the Plan before bringing suit in this Court. In this case there is no dispute that the plaintiff made a claim for benefits under the Plan. What is in dispute, however, is (1) at what point in time she made such a claim, (2) when the Administrator denied her claim and (3) whether the plaintiff requested a review of that denial in accordance with Section 8.06(b) of the Plan.

Here, several communications occurred between the plaintiff, through her representative, and Plan Administrators. The defendants assert that the plaintiff did not make a claim for benefits until her letter to them dated May 3, 2001. Her claim was denied, according to the defendants, by letter dated June 11, 2001, which triggered the sixty-day window during which the plaintiff could seek review of that denial. In that letter, the Plan Administrator informed the plaintiff "to consider [his] response to be a Denial of Claim pursuant to Section 8.06(a) of the Plan." Wartel Affidavit, June 11, 2001, Letter, Ex. 2. Conversely, the plaintiff argues that the May 3, 2001, letter was a request for review of the Plan Administrator's *de facto* denial of her claim for benefits, which satisfied her obligation to exhaust the administrative remedies under Plan.

The Plan does not require a claim to be made in any particular form. *See* Profit Sharing Plan, Section 8.06 at 61. Further, it requires only that a claimant "may make a written request to the Administrator" for review of a claim denial, and that certain facts be included in it. *Id.* The fact that the Plan Administrator's letter dated June 11, 2001, purported to be a denial of the plaintiff's claim for benefits does not operate to remove the possibility that all prior correspondences between the parties

might, indeed, be found to constitute a claim for benefits and, therefore, does not preclude other documents from constituting a valid request for review under the Plan.

In considering the evidence in the light most favorable to the plaintiff and drawing all reasonable inferences and resolving all ambiguities in her favor, we find that a genuine issue of material fact exists as to whether the plaintiff exhausted her administrative remedies under the Plan. Moreover, if it is later determined that she failed to do so, there remains an issue as to whether proceeding further with the administrative review process would have been futile. Consequently, the defendants' motion for summary judgment [**Doc. 9**] is **DENIED**. The defendants' motion to strike the Letter [**Doc. 28**] is also **DENIED**. We note further that our decision denying the defendants' motion for summary judgment would remain the same even if we decided differently their motion to strike.

**SO ORDERED.**