[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
G. Dale Dulgarian, as Trustee of the Krikor S. Dulgarian Trust of December 22, 1960, (Dulgarian) appeals the decision of the Zoning Board of Review of the City of Providence (Board), granting a variance to William J. Denise for Tin Fort, LLC, as applicant (Tin Fort), and Patricia Forte, as Trustee of the Winter Street Trust, as owner (collectively, the Applicants). Preliminarily, Dulgarian also moves to strike additional evidence Tin Fort presented to the Superior Court, and which was not presented to the Board. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
On February 20, 2001, Applicants filed an application with the Board seeking relief from Sections 303, 14.2, 32, and 703.5 under Section 902 of the Providence Zoning Ordinance (Zoning Ordinance). Applicants sought a change of the use of the building from offices and a showroom to four artist lofts, two professional offices, a performance theatre, and a café. The offices and café were permitted uses within the C-2 zoning district. The artist lofts and performance theatre required special use permits pursuant to the Zoning Ordinance. Applicants also sought a dimensional use variance from the parking requirement. The property referred to in this dispute is located on the Providence Tax Assessor's Plat 29, Lots 129 and 131, otherwise known as 819-831 Westminster Street. Both lots are located in a C-2 General Commercial District. This property is also located in the West Side Overlay District, pursuant to Section 503 of the Zoning Ordinance.[1]
On Tuesday, May 8, 2001, a public hearing was held on Tin Fort's application. Mr. Robert Berkelhammer, attorney for Tin Fort (Att'y Berkelhammer), first explained to the Board that Applicants were requesting special use permits and a dimensional use variance for relief from parking. Att'y Berkelhammer further explained that there were 29 parking spaces, but the owner of the building, Ms. Forte, had granted to the Veterans of Foreign Wars (VFW) by deed 15 of the 29 spaces. Att'y Berkelhammer continued to explain that the 15 parking spaces were deeded to VFW in perpetuity. Additionally, Tin Fort has joint use of those 15 parking spaces. For the purposes of this application, Att'y Berkelhammer stated that because Tin Fort will not have exclusive use of those 15 spots, they could not include these parking spaces in their application to the Board. Atty'y Berkelhammer explained that pursuant to the ordinance requirements, Tin Fort would need 19 spots and currently they have 14 exclusive parking spaces. Att'y Berkelhammer also informed the Board that even though the VFW does not use its parking spots, the possibility exists that if that property were sold to someone else, that person may very well use the parking spots deeded to him or her. (Tr. at 2.) However, Att'y Berkelhammer testified that theatre performances would be held three nights a week, and would be held during evening hours when there is no other use of the building. Thus, it was Att'y Berkelhammer's position that even though Applicants require relief, there is no real parking issue. (Tr. at 3.)
Tin Fort presented an expert witness, Mr. William Denise, a member of the Tin Fort group. Mr. Denise testified that he had a background in architecture and explained the coming together of several displaced artists to create artists lofts, a performance theatre and a café. Mr. Denise further testified that the multi-use building will be successful and that the uses are complementary to the area. (Tr. at 5.) Mr. Denise indicated that there was an issue as to the parking situation in that district. Id. He explained that the West Side Overlay District (WSOD) guidelines permitted a reduction of parking from what is required by the Zoning Ordinance. Id. Mr. Denise continued to explain, that at this point in the application, he or his group was not in a position to start negotiations with neighboring properties to enter in rental agreements for parking spaces. Id. Mr. Denise did note, however, that many of the lots neighboring the property are vacant lots and are not being used in the evening hours. Id. Furthermore, Mr. Denise stated that it is the group's intention to enter into negotiations for parking spaces with the School Department as to have additional parking for the performance theatre. (Tr. at 5-6.) Mr. Denise described the different uses of the building as "off schedule uses" primarily because the uses were primarily for art purposes. (Tr. at 6.) Mr. Denise explained that the theatre would be used during the evening hours, the café would be utilized during the day, and the professional offices would be scheduled for lunch. Id.
Subsequently, the Board opened the floor to people who wished to speak in favor of the Tin Fort's application. Ms. Kari Lang, the Executive Director of the West Broadway Neighborhood Association (WBNA), testified that she was in favor of this application. (Tr. at 10-11.) Specifically, Ms. Lang testified that this application complements the WBNA's vision for the Westminster Street Overlay District. Id.
The Board also heard from two objectors of the aforementioned application. First, Appellant, Mr. Dulgarian, who is the abutting neighbor of the Tin Fort, testified that parking was the primary issue, not the proposed uses. (Tr. at 11.) Mr. Dulgarian noted that as it now exists, without Tin Fort's uses in the building, parking is an issue. Id. Mr. Dulgarian explained to the Board that during the day there is "virtually no place to park." Id. Mr. Dulgarian further explained that his objection was based on his belief that the parking requirements were lower than what was required by the Zoning Ordinance and the Overlay Zone. (Tr. at 13.) Secondly, Mr. Dulgarian stated that the Overlay Zoning requirement that suggests less parking required than what the commercial zone actually requires is, in fact, inaccurate. Id. In Mr. Dulgarian's opinion, there is insufficient parking in the area; thus, Mr. Dulgarian testified, granting a dimensional variance would further reduce the number of spots available to already existing businesses in that area.Id.
Ronald J. Gizzarelli also objected to the application submitted by Tin Fort. (Tr. at 15.) Mr. Gizzarelli testified that he too was concerned about the parking issue. Id. Mr. Gizzarelli stated that his concern was the size of the activity. Id. In particular, he questioned how many people that activity would draw during the hours before 7 p.m. Id. The hours that were of main concern to Mr. Gizzarelli would be between 10 a.m. and 7 p.m. Id. However, Mr. Gizzarelli stated that any activity that would occur after 7 p.m. would be welcomed. Id.
On August 21, 2001, the Board rendered a decision, Resolution No. 8535 (Decision), granting both the special use permit and a dimensional variance requested in the application. The Board's Decision set forth five findings of fact and law, which included the determination that the proposed multi-use building and parking would not be detrimental or injurious to the general health or welfare of the community. Thereafter, Mr. Dulgarian, timely filed a complaint in the Superior Court seeking review of the Board's decision.
 STANDARD OF REVIEW
General Laws § 45-24-69(d), which directs this Court in its review of a decision of the Board on appeal, provides that:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse of modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The Superior Court reviews a decision of the zoning board pursuant to § 45-24-69(d), which precludes a reviewing court from substituting its own judgment for that of the zoning board in regards to the credibility of witnesses or the weight of evidence concerning questions of fact.Kaveny v. Town of Cumberland Zoning, 875 A.2d 1, 7 (R.I. 2005) (citingCurran v. Church Cmty. Hous. Corp., 672 A.2d 453, 454 (R.I. 1996)). It is the function of this Court to examine the entire record to determine whether substantial evidence exists to support the board's findings. MillRealty Assocs. v. Crowe, 841 A.2d 668 (R.I. 2004) (citing De Stefano v.Zoning Bd. of Review, 405 A.2d 1167, 1170 (R.I. 1979)). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. ofReview of N. Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647
(R.I. 1981)).
This Court may, however, reverse the decision of the zoning board if it is in violation of constitutional or statutory provisions, was made in excess of statutory authority, made upon unlawful procedure or error of law, was clearly erroneous in view of the evidence, or was arbitrary or capricious. Kaveny, 875 A.2d at 7 (citing Curran v. Church Cmty. Hous.Corp., 672 A.2d at 454 (R.I. 1996)). Reversal of the board's decisions concerning exceptions or variances under zoning ordinances is warranted when it is clear that the board acted arbitrarily and/or abused its discretion. Madden v. Zoning Bd. of Review of Warwick, 89 R.I. 131, 134,151 A.2d 681, 683 (1959).
 MOTION TO STRIKE
A motion to strike is a procedure created by Super. R. Civ. P. 12(f), which provides that "the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." This motion is the proper procedural device to challenge evidence. Steinberg v. Obstetrics-Gynecological InfertilityGroup, 260 F. Supp. 2d 492, 495 (D.C. Conn. 2003) (interpreting a motion to strike hearsay evidence in a summary judgment motion pursuant to Fed.R.Civ.P. 12(f)).
Mr. Dulgarian challenges the admissibility of a certain offer to compromise and settle the issues between Dulgarian and Tin Fort as to the appeal of the Zoning Board's decision, as well as those portions of Tin Fort's memorandum discussing it. Mr. Dulgarian claims the additional evidence is outside the record and thus should not be considered by the Superior Court on review. Mr. Dulgarian also contends that Rhode Island Rule of Evidence 408 prevents Tin Fort from admitting this evidence.
 ADMISSIBILITY OF ADDITIONAL EVIDENCE
When the Superior Court reviews a zoning board's decision, additional evidence may be presented in either of two ways. First, if the additional evidence is material, the court may grant leave for the parties to present additional evidence before the zoning board. Section 45-24-69(b). Before the court will grant leave, the parties must show good reason for failing to present the evidence to the zoning board at the hearing. Id.
The board may then modify its findings and amend the record to include the evidence. Id. In this procedure, the court primarily considers whether the evidence is material to the zoning board's decision. SeeGuiberson v. Roman Catholic Bishop of Providence, 112 R.I. 252, 255-60,308 A.2d 503, 505-08 (1973) (holding that additional evidence of increased sewage was relevant to ascertaining the public convenience and welfare, and thus the Superior Court should have granted the motion for the board to consider it).
Tin Fort contends that the evidence is material to Dulgarian's credibility on factual assertions offered at the hearing. Dulgarian argued before the Zoning Board that there would not be sufficient parking, (Tr. at 11-13), but the Zoning Board believed three extra parking spaces would not be a problem. (Tr. at 20-21.) Therefore, if the Zoning Board did not give great weight to Dulgarian's objections in its decision, Tin Fort maintains, presenting additional evidence further questioning Dulgarian's credibility is immaterial.
Second, if the Court believes, during its consideration of the record, that "additional evidence is necessary for the proper disposition of the matter," the Court may take the necessary evidence in open court. Section45-24-69(c). That evidence is then included in the record which the court analyzes. Id. The Court does not consider the materiality of the evidence in this procedure, but rather the sufficiency of the record. SeeTarasovic v. Zoning Com. of Trumbull, 147 Conn. 65, 69 (1959) (interpreting a similar provision in Connecticut Gen. Stat. § 8-8(k) as permitting a court to take additional evidence "only when that record fails to present the hearing in a manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason requires it."); Joynt v. King, 176 N.Y.S.2d 776, 781 (4th Dept. 1958) (interpreting a similar provision in N.Y. Town Law § 267(7) (now § 282) as allowing the reviewing court to take evidence "whenever the court finds that further proof is necessary to clarify or supplement the evidence before the board, in order to enable it to determine whether the board's decision was arbitrary"); Edward H. Ziegler, Jr., Rathkopf's TheLaw of Zoning and Planning, § 62:46 at 62-113 (2005) ("The fact that the court takes testimony does not transform the proceeding into a trial de novo. The additional testimony is only used to clarify or supplement the record before the board; the court's determination must still be whether, on the basis of that record as so supplemented or clarified, the board's determination was arbitrary.").
This Court has reviewed the contents of the file record: the transcript, evidence, and Decision on the record. Finding the same sufficiently clear to permit a proper review of the Board's Decision, this Court need not receive additional evidence in open court.
 RULE 408
Dulgarian further argues that Rhode Island Rule of Evidence 408 prevents this evidence from being introduced because the agreement is an attempt to compromise a claim. Rule 408 provides:
 "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."
This rule applies to cases involving liability for a claim where admissions in settlement negotiations may jeopardize a party's rights. See, e.g., Salter v. R.I.Co., 27 R.I. 27, 30, 60 A. 588, 589 (1905) (negligence claim); Laudati, Inc. v. Liberatore, 51 R.I. 282, 154 A. 120
(1932) (action in assumpsit). Even assuming arguendo that the rule applies to an appeal of a zoning board's decision by analogy, Tin Fort presented the evidence to this Court, so the Zoning Board's evaluation of Dulgarian's credibility would not be overturned, which is within the rule's exception for proving bias or prejudice of a witness. However, this Court does not consider the credibility of witnesses on review of a zoning board decision. Munroe v. Town of E. Greenwich,733 A.2d 703, 705 (R.I. 1999). Therefore, the Court will neither grant Tin Fort leave to present this evidence to the Zoning Board for a reconsideration of its Decision nor admit such evidence in open court.
For the above reasons, Plaintiff's motion to strike is granted. The material in Tin Fort's memorandum from the last line of page 5 through line 19 of page 6, the material from line 21 of page 17 through line 10 of page 19, and the "Agreement" attached as Exhibit 5 to Tin Fort's memorandum are hereby struck from the record.
 The Zoning Board Decision
At the outset, Mr. Dulgarian argues that the Board's Decision involved a misconception regarding the number of parking spaces that were available to the Applicants. Mr. Dulgarian notes that under the provisions of the two off-street parking calculations provided in the applications, the total number of parking spaces that were required was listed as 38 parking spaces, although in Mr. Dulgarian's calculation, the Applicants actually required 40 spaces. Mr. Dulgarian argues that pursuant to Section 703.2 of the Ordinance, Tin Fort was bound by the requirement of that section. Mr. Dulgarian asserts that the Board erred when it granted a dimensional variance requiring 14 off-street parking spaces when the ordinance required either 38 or 40 parking spaces. Such a reduction, Mr. Dulgarian argues, does not alleviate the "problem of `unsightly parking along the main streets.'" Furthermore, Mr. Dulgarian states that the Board misconceived the impact of the WSOD requirements, believing that the WSOD permitted the lessening of parking spaces in contravention of the requirements of Section 703 of the Zoning Ordinance.
Alternatively, Tin Fort argues that the number of required spaces in the underlying commercial (C-2) zone was calculated by the Department of Inspections and Standards. According to this agency, Tin Fort was required to have 36 parking spaces. Tin Fort argues that pursuant to the Section 506.6 (B) of the zoning ordinance, with regards to the WSOD, the number of parking spaces may be reduced by 50%. As such, Tin Fort avers that they were required to have 18 parking spaces. Tin Fort argues that Duglarian's reading of the definition of an overlay district is too restrictive. Tin Fort states that Mr. Dulgarian assumes that the requirements of an overlay district is violated by taking a mathematical view of the issues, in that 18 parking spaces are fewer than 36 parking spaces; therefore, the statute is violated.
The Zoning Ordinance clearly lists the requisite minimum parking spaces for each specified use with a zone. Section 703.2 outlines the number of spaces designated for residential, cultural, entertainment, and other general services. It is undisputed that Tin Fort's lots are located in the West Side Overlay District. Section 506.6 of the ordinance delineates that parking space requirement. It reads in pertinent part:
 "Parking and loading requirements of Article VII shall be required, except as provided below:
 (B) Space requirements. Parking space requirements may be reduced by a minimum of fifty (50) percent but cannot exceed a maximum of eighty (80) percent of the spaces required by section 703.2. The paved area of a lot shall not exceed the maximum parking required herein."
The Board found that Tin Fort was required to have 18 parking spaces within its zoning district. The Board also found that Tin Fort actually provided 15 parking spaces, relying on the report from the Department of Planning and Development, which stated that 18 parking spaces were required, and that 15 spaces would actually be provided. The Board held that the dimensional variance complied with the conditions set forth in the Zoning Ordinance. The Board further held that that through the testimony provided by Tin Fort, the dimensional variance would "not substantially injure the use and enjoyment of the neighboring properties and would not significantly devalue the neighboring property values," and that "the dimensional variance would not be detrimental of injurious to the general health or welfare of the community." (Board Decision at 2.) Although Tin Fort stated on its application and at the hearing that it could provide 14 of a total of 29 spots, Tin Fort in its memorandum of law stated that it actually possessed 30 spots. The evidence of record indicates that the Department of Inspection and Standards and the Department of Planning and Development found that Tin Fort would provide 15 of 30 spots. Accordingly, the Court finds that the Board's Decision regarding the number of parking spaces required by Tin Fort was not clearly erroneous in light of the reliable, probative, and substantial evidence on the record.
 Dimensional Variance
Mr. Dulgarian argues that the Board's Decision was clearly erroneous in light of the reliable, probative, and substantial evidence on the record. Specifically, Mr. Dulgarian contends that Tin Fort failed to prove that it would suffer a hardship if the dimensional variance was not granted, and that it would amount to more than a mere inconvenience such that there is no reasonable alternative to enjoy a legally permitted beneficial use of the property pursuant to § 45-24-31(61)(ii). Mr. Dulgarian maintains that Tin Fort did not establish that there were no reasonable alternatives allowing it to enjoy a legally permitted beneficial use. Mr. Dulgarian asserts that if Tin Fort's building had professional offices and had applied only for a special use permit for the artist lofts, Tin Fort would have met the requisite number of 14 off-street parking spaces required by the Zoning Ordinance. However, it is Mr. Dulgarian's contention that due to the multiple uses, including the café and performance theatre, the required number of off-street parking spaces under the Zoning Ordinance increased to 24 spaces. Mr. Dulgarian further claims that the Board ignored the testimony of the objectors at the hearing, who testified that they rely upon on-street parking for their business, and granted a dimensional variance that disregards the requirements of Section 703.2 of the Zoning Ordinance.
In response, Tin Fort argues that the record clearly indicates that it did meet the requirements of proving the need for a dimensional variance. Tin Fort contends that a literal enforcement of the Zoning Ordinance, including the parking requirements of the WSOD, requires that Tin Fort provide 18 parking spaces. Tin Fort argues that given the layout of the parking lot, the rigid application of the WSOD parking requirements would severely hinder the proposed development of Tin Fort's project and "preclude the full enjoyment of the permitted use." Such a strict enforcement of the parking requirements would result in more than a mere inconvenience.
In granting a dimensional variance, the Rhode Island General Laws and the Providence Zoning Ordinance clearly outline the requirements that the applicant must prove. At the time of the application and the August 21, 2001 decision of the Board, Section 45-24-41(d)(2) of the Zoning Enabling Act provided that an applicant seeking a dimensional variance needed to demonstrate "`that the hardship suffered by the owner of the subject property if the dimensional variance [were] not granted amounts to more than a mere inconvenience, which means there is no other reasonablealternative to enjoy a legally permitted beneficial use of one'sproperty.'" Sciacca v. Caruso, 769 A.2d 578, 583 (R.I. 2001) (emphasis in original). Thus, at the time of the application and the Board's decision, the standard for granting a dimensional variance included "`no other reasonable alternative' that would allow the applicant to enjoy a legally permitted beneficial use of the property." Bernuth v. Zoning Bd.of Review, 770 A.2d 396, 401 (R.I. 2001). With respect to that burden of proof, our Supreme Court acknowledged that "it is now more difficult for a property owner to obtain dimensional variance than it was under the pre-1991 amendment standard of `more than a mere inconvenience.'"Sciacca, 769 A. 2d at 582 n. 6. It was not until recently, in Lischio v.Zoning Board of Review of North Kingstown, 818 A.2d 685 (R.I. 2003), that the Rhode Island Supreme Court recognized the reinstatement of the "judicially created Viti Doctrine" with the 2002 amendment of §45-24-41(d)(2). Pursuant to the amended § 45-24-41(d)(2), not applicable to the subject application, in order for an applicant to obtain a dimensional variance, he or she must demonstrate that the hardship he or she would suffer amounted to more than a mere inconvenience. Id. at 692.
The statutory requirements for obtaining a zoning board of review variance are listed in § 45-24-41(c):
 "In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
With respect to element 4 — "[t]hat the relief to be granted is the least relief necessary" — Mr. Dulgarian argues that the Board's Decision in granting the dimensional variances was not the "least relief necessary" as required by § 45-24-41(c)(4). Mr. Dulgarian asserts that the Board accepted Tin Fort's multiple uses without further investigation as to other alternatives or other possible uses. In addition, Mr. Dulgarian argues that the Board "rubber-stamped" the dimensional variance. Mr. Dulgarian further asserts that it is clear from the Board's Decision that no consideration was given to an alternative use or an alteration in the uses and special uses, so that the required number of parking spaces under the Zoning Ordinance might be reduced. Mr. Dulgarian does note, however, that the Board delayed in rendering a decision so that Tin Fort could investigate obtaining more parking. (Tr. at 19-20.)
With respect to the parking, it is Tin Fort's contention that the Overlay District definition should be considered in the context of the Enabling Act of 1991, by looking at the purpose of the Enabling Act and coupling those purposes with the goals of the WSOD. Tin Fort contends that the purpose Section 506.6 (B), the parking space reduction, is not for the direct benefit of any particular parcel, bur rather the reduction is for the enhancement of the designated properties within the WSOD and for the promotion of the policies and goals established by the Providence City Council. In Tin Fort's view, the WSOD fully complies with the authority and objectives contained in the Enabling Act.
The record evidences no discussion during the hearing or amongst the Board members to indicate whether reasonable alternatives were even considered in order to meet the parking requirements. The Board members did not discuss reducing the number of uses in the adjacent building. Rather, the discussion between the Board members concluded that Tin Fort should be given an opportunity to obtain further parking from other businesses in the area. It is well settled that the burden is on the applicant to show that the relief to be granted is the least relief necessary. See § 45-24-41(c)(4); Lischio, 818 A.2d at 692 ("in order for a request for a dimensional variance to be granted the applicant must satisfy the requirements for both 45-244-1(c) and (d)(2)"). Thus, a request for a dimensional variance must be supported by the reliable, probative, and substantial evidence that the proposed project requires the least relief necessary to obtain the permitted use sought.
However, there was virtually no discussion as to whether this was the least relief necessary in order to accommodate the uses in the contiguous lot. As Mr. Dulgarian argues, there was no discussion as to whether some of the uses in that building could be altered or diminished so that Tin Fort could meet the requisite number of parking spaces. For the aforementioned reasons, this Court finds that the Board's finding that Tin Fort's request for a dimensional variance is the least relief necessary, is not supported by the reliable, probative, and substantial evidence on the record.
Mr. Dulgarian further contends that the Board failed to consider §45-24-41(c)(2), whether the hardship Tin Fort complains of is the result of any prior action of the applicant. Mr. Dulgarian argues that Ms. Forte, the owner of the lots, deeded away 15 of the available spots to the VFW, and now, through the testimony of Mr. Denise, complains that there are insufficient parking spaces to accommodate the adjacent building. Furthermore, Mr. Dulgarian argues that Mr. Denise is attempting to hide behind the owner of the lot, Ms. Forte, as an applicant in order to obtain this dimensional variance. In addition, Mr. Dulgarian states that even though Mr. Forte owns adjacent lots, she is unwilling to have any liens place upon those lots in order to supply the required off-street parking for Lot 129. Mr. Dulgarian contends that the loss of a number of parking spaces is the result of prior action on the part of Ms. Forte, the owner of the lot, who now complains via Mr. Denise, that a dimensional variance is now required.
Alternatively, the Applicants argue that Mr. Dulgarian's assertion that Mr. Denise, the applicant, is attempting to hide behind Ms. Forte, the owner, is erroneous. Tin Fort argues that it was not Ms. Forte, or the Winter Street Trust, that deeded the 15 parking spaces to the VFW, but rather the predecessor owner, Redwood Investments, Inc. Applicants further explain that Winter Street Trust acquired title to the property in issue subject to the pre-existing rights of the VFW. Thus, it is Tin Fort's contention that it was not Ms. Forte, or the Winter Street Trust, or Mr. Denise, who created the hardship because it already existed upon the acquisition of the lots.
To satisfy § 45-24-41(c) (2), the applicant must demonstrate that the alleged hardship is not the result of any prior action on the part of the applicant and does not result primarily from the desire of the applicant to realize financial gain. Atty. Berkelhammer states in the record that the parking spaces were deeded to VFW in 1995, years prior to Tin Fort's application to the Board. The Board in its Decision did not make a finding regarding whether Tin Fort's deed to the VFW of 15 parking spaces was a result of prior action on the part of the Applicants. However, the Chairperson of the Board, Sandra Carlson, stated with respect to the Winter Trust: "They should never have given their parking away to the V.F.W." (Tr. At 20.) Accordingly, the Board's granting of dimensional relief without making a specific finding regarding Section 45-24-41 (c) (2) was in violation of ordinance and statutory provisions.
 Special Use Permits
Tin Fort argues that the record below is replete with testimony and other evidence that they have met the requirements for the special use permits granted by the Board. Tin Fort contends that there was sufficient evidence to show that the proposed uses would be complementary with the neighborhood uses and in conformity with the WSOD. Tin Fort asserts that the Board based its decision to grant the special use permits and dimensional variance upon the entire record. The Board's Decision included the findings that the application would not substantially injure or devalue the neighboring property. Tin Fort asserts that the Board also found that the proposed uses would enhance the surrounding properties and the values of those properties. Tin Fort further argues that the Board additionally found that the proposed project would not be injurious to the health or welfare of the community.
Tin Fort additionally argues that the Rhode Island Supreme Court ruling in Newton v. Zoning Board, 713 A.2d 239 (R.I. 1998), does not apply to the instant matter. It is Tin Fort's contention that Newton held that an applicant for zoning relief could not join requests for a special use permit and a dimensional permit simultaneously. Furthermore, Tin Fort asserts that Newton applies to applicants who attempt to obtain those reliefs on an identical parcel of land. Tin Fort argues that the facts in this case are easily distinguished from the facts in Newton. First, Tin Fort explains that although the Zoning Ordinance provides for mergers of contiguous, substandard lots if one of the two lots has an area of less the 4000 square feet, those requirements are inapplicable in the instant case, as Lot 129 contains 9675 square feet of land, and Lot 131 contains 11,608 square feet. Tin Fort contends that in Newton, the reliefs sought were being applied to one parcel of land. Tin Fort asserts that in the present case, there are two parcels of land. Tin Fort states that the special use permits were to be applied to Lot 129, and the dimensional variance was to be applied to Lot 131. Tin Fort argues that they established by the evidence submitted that they met the burden to obtain the dimensional variance for parking independent of the special use permit for the building.
Section 204.2 of the Zoning Ordinance permits merger of substandard lots "if two (2) or more contiguous lawfully established lots of record, where one (1) or more of the lots is less than four thousand (4,000) square feet . . . such lots shall be considered to be one lot and undivided for the purpose of this ordinance. . . ." In the instant matter, Tin Fort has two contiguous lots, Lot 129 is 9675 square feet, and Lot 131 is 11,608 square feet. Pursuant to the aforementioned section, these lots under the Zoning Ordinance are not merged. In addition, it is important to note that although a parking lot is a permitted use in the C-2 zoning area, Tin Fort has not attempted to designate this lot as principal use in accordance with Section 702 of the ordinance, and as defined by the ordinance, Section 1000.110,
 "[o]ff-street parking of automobiles on one (1) or more lots where parking spaces for more than four (4) automobiles are available for public use whether free, for compensation or to satisfy parking requires of a principal use on separate and noncontiguous lots."
Furthermore, under the WSOD a principal use parking lot is not a permitted use pursuant to Section 506.6 of the Zoning Ordinance. Therefore, Tin Fort is not permitted to use this lot as principal parking under the WSOD.
Section 701 of the Zoning Ordinance provides that accessory parking "shall be located on the same or contiguous lot as the principal structure or use the parking is intended to serve." It is clear from the record that Tin Fort intended Lot 131 as an off-street parking lot that is accessory to Lot 129, the principal building with mixed uses. The Zoning Ordinance, Section 1000.6, defines accessory use as "[a] use of land or a building, or portion thereof, customarily incidental and subordinate to the principal use of the land or building. An accessory use shall not be permitted without the principal use to which it is related." The Zoning Ordinance also defines accessory use parking. Section 1000.109 states that "[o]ff-street parking of automobiles on the same or contiguous lot as a principal use where said parking is established or required in conjunction with the principal use."
With regards to special use permits, Section 902.4 of the Zoning Ordinance authorizes the Board to approve these permits where they are permitted by the use regulations chart pursuant to Section 303. SeeNortheastern Corp. v. Zoning Bd. of Review of New Shoreham, 534 A.2d 603
(R.I. 1987). In order for the board to authorize a special use permit, the board must first consult the opinion of the Department of Planning and Development, and making findings of fact that the special use will "comply with any conditions set forth" in the ordinance, "will not substantially injure the use and enjoyment of nor significantly devalue neighboring property," and "will not be detrimental or injurious to the general health, or welfare of the community." Section 902.4 (A)(B)(1)-(3). It is clear that a special use permit may be granted in accordance with Section 902.4, pursuant to the grant of authority contained in Section 45-24-42 of the Zoning Enabling Act. Section 45-24-42
provides that
 "A zoning ordinance shall provide for the issuance of special-use permits approved by the zoning board of review. The ordinance shall:
 (1) Specify the uses requiring special-use permits in each district;
 (2) Describe the conditions and procedures under which special-use permits, of each or the various categories of special-use permits established in the zoning ordinance, may be issued;
 (3) Establish criteria for the issuance of each category of special-use permit, that shall be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the city or town;
 (4) Provide for public hearing and notification of the date, time, place, and purpose of those hearing to interested parties. Public notice shall be given at least fourteen (14) days prior to the date of the hearing in a newspaper of general circulation in the city or town. Notice of hearing shall be sent by first class mail to the applicant, and to all those who would require notice under § 45-24-53. The notice shall also include the street address of the subject property. A zoning ordinance may require that a supplemental notice, that an application for a special use permit is under consideration, be posted at the location in question. The posting is for information purposes only and does not constitute required notice of a public hearing. The cost of notification shall be borne by the applicant;
 (5) Provide for the recording of findings of fact and written decisions; and
 (6) Provide that appeals may be taken pursuant to § 45-24-70."
However, with respect to the granting of a dimensional variance in conjunction with a special use permit, the version of § 45-24-42
applicable in 2001 did not permit such a grant. As our Supreme Court held in Northeastern Corp., a deviation or dimensional variance "comes into play only when the project involves a permitted use. It is not available in a situation in which the use is granted by way of special exception."534 A.2d at 605 (citations omitted). It was not until the recently amended version of § 45-24-42(c), that an ordinance "may additionally provide that an applicant may apply for, and be issued, a dimensional variance in conjunction with a special use."[2] The subject Zoning Ordinance does not specifically allow special use permits and dimensional variances to be issued in conjunction with each other.
Thus, at issue is whether a dimensional variance can be granted for an accessory use when for the principal use, there has been granted a special use permit. In Newton v. Zoning Board of Review of City ofWarwick, 713 A.2d 239 (R.I. 1998), the Rhode Island Supreme Court reaffirmed the proposition that unless the ordinance otherwise provides, "[t]he ordinance is unambiguous and imperative in requiring that a special use meet all the criteria authorizing such special use." Therefore, a dimensional variance "could not be granted in conjunction with the issuance of a special-use permit." Id. at 242. The rules of statutory construction apply to the interpretation of an ordinance. Townof N. Kingstown v. Albert, 767 A.2d 659 (R.I. 2001) (citing Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981)). Thus, because Lot 131 could not exist without the principal building on Lot 129, and in fact was incidental to the building with both permitted and special uses and is contiguous to the principal building, the parking lot must be deemed accessory to the principal building. This Court thus finds that the Board was without authority when it granted both the special use permit and dimensional variance for both lots due to the fact that the parking lot is intended to serve the principal building with its multiple uses.
After a review of the entire record, this Court finds that the Board's Decision to grant Tin Fort's special use permits and a dimensional variance was in violation of statutory and ordinance provisions, in excess of authority, affected by error of law, and erroneous in view of reliable, probative, and substantial evidence of record. Substantial rights of Mr. Dulgarian have been prejudiced. Accordingly, the Decision of the Board is reversed. This Court also grants Mr. Dulgarian's Motion to Strike.
Counsel shall submit the appropriate order for entry in accordance with this opinion.
[1] In its Memorandum of Facts and Law, Tin Fort stated that it incorrectly represented to the Board that there were 29 spots when there are actually 30 spots, of which it has exclusive access to 15 spots. See
Memorandum of Facts and Law of Tin Fort, LLC at 2.
[2] The present version of § 45-24-42 (c) states:
 "The ordinance additionally may provide that an applicant may apply for, and be issued, a dimensional variance in conjunction with a special use. If the special use could not exist without the dimensional variance, the zoning board of review shall consider the special use permit and the dimensional variance together to determine if granting the special use is appropriate based on both the special use criteria and the dimensional variance evidentiary standards."