**Paul JACOBSON, Plaintiff,**

v.

**DEUTSCHE BANK, A.G., Suzan J. Mitchell, Executrix of the Estate of Edson Mitchell, and Rolf Breuer, Defendants.**

**No. 99 CIV. 1219(NRB).**

United States District Court,
S.D. New York.

June 14, 2002.

Jeffrey L. Liddle, James A. Batson, Christine Palmieri, Liddle & Robinson L.L.P., New York City, for Plaintiff.

Jeffrey Barist, Richard E. Rosberger, Milbank, Tweed, Hadley & McCloy L.L.P., New York City, for Defendants.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff Paul Jacobson, a former employee of Deutsche Bank, A.G. ("DBAG"), brings this action for defamation against Rolf Breuer, CEO of DBAG, Edson Mitchell,[1] his former supervisor, and DBAG itself.[2] Defendants moved for summary judgment, arguing that Mr. Jacobson is unable to prove the most fundamental element of his case—that Mr. Breuer actually uttered the allegedly defamatory statements at issue. Because we find that the Federal Rules of Evidence mandate exclusion of the single piece of evidence offered by plaintiff to satisfy his burden on this element, we grant defendants' motion and dismiss this suit with prejudice.

## BACKGROUND

Deutsche Bank, a German corporation, is one of the world's leading financial services providers, with nearly a hundred thousand employees and millions of customers. *See* http://www.db.com. From early 1996 to late 1997, Mr. Jacobson was a Managing Director and Co–Head of the North American Fixed Income Division of Deutsche Morgan Grenfell, Inc. ("DMG"), a subsidiary of DBAG. On or about November 30, 1997, however, Mr. Jacobson resigned from DMG.[3]

Several months later, on or about March 3, 1998, Mr. Breuer presented a speech to the Frankfurt Law Society in Frankfurt, Germany, on the subject of the then-impending introduction of the Euro. Following the speech, Mr. Breuer was approached by members of the press, including Wolfgang Reuter, a reporter for Bloomberg News Service ("Bloomberg"),[4] at which point Mr. Reuter and Mr. Breuer conversed briefly in the German language (the "March 3 interview"). The only other person known to be present for this ex-

---

1. Mr. Mitchell died during the pendency of this litigation. His wife and executrix, Suzan J. Mitchell, was accordingly substituted as a defendant.

2. Federal jurisdiction is founded on diversity. Compl. ¶ 5.

3. DBAG announced his resignation in an internal publication dated December 5, 1997, stating, "Paul Jacobson ... has decided to resign from DMG .... During his two-year tenure at DMB, Jacobson built a number of successful businesses where customer share has grown substantially." Rosberger Decl. Ex. C.

4. Bloomberg, headquartered in New York City, is an information services, news, and media company with offices around the world.

change was Dierk Hartwig, DBAG's chief press spokesman.

The following day, at 12:48 p.m. Eastern Time, Bloomberg issued a news report ("Article One") that attributes certain quotations to Mr. Breuer ostensibly based on the March 3 interview. Compl. Ex. A. Article One states, in pertinent part:

> ... Deutsche Bank is cutting costs in its North American investment banking business, Breuer said.
>
> "We are dismissing people who haven't performed," Breuer said, "there are losers in the bank and we are getting rid of them."
>
> Breuer admitted that the bank had a "very bad fourth quarter in bonds trading out of New York, and as a result we've dismissed Paul Jacobson." Jacobson was the head of the North American fixed-income sales business.[5]

*Id.* The gravamen of Mr. Jacobson's Complaint is that Mr. Breuer's statements, as quoted in Article One, defamed him by, *inter alia*, falsely blaming him for bond trading losses,[6] falsely stating that he was "dismissed" from DBAG,[7] and implying that he is a "loser." Pl.'s Opp. at 13–14. Mr. Breuer, however, flatly denies making these statements and, indeed, denies ever uttering Mr. Jacobson's name during the March 3 interview. Def.'s Responses no. 32; Transcript of September 24, 1999, Deposition of Rolf E. Breuer ("Breuer Dep.") at 59:4–12; 110:23–25. Mr. Hartwig likewise denies that Mr. Breuer made the allegedly defamatory statements at issue. Transcript of February 21, 2002, Deposition of Dierk Hartwig ("Hartwig Dep.") at 9:21–25.

Accordingly, Mr. Jacobson has attempted to procure the testimony of the only other person known to have been present at the March 3 interview: Mr. Reuter himself. At this Court's request, Mr. Reuter was deposed by a German judge on October 20, 2000, in Germany. *See* Letter of Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence in Civil or Commercial Matters[8] dated June 5, 2000; Transcript of October 20, 2000, Deposition of Wolfgang Johannes Reuter ("Reuter Oct. Dep."); Letter from James A. Batson dated November 1, 2000. While Mr. Reuter answered a few background questions, he invoked the journalist's privilege[9] in refusing to answer any

---

**5.** At 4:32 p.m. on March 4, 1998, Bloomberg issued a second article ("Article Two"), entitled "Deutsche Bank to Cut Costs, Retain U.S. Business." Compl. Ex. B. Article Two is nearly identical to Article One, except that much of the allegedly defamatory material has been excised:

> ... Deutsche Bank is cutting costs in its North American investment banking business, Breuer said.
>
> "We are dismissing people who haven't performed," Breuer said, "there are losers in the bank and we are getting rid of them."
>
> Breuer admitted that the bank had a "very bad fourth quarter in bonds trading out of New York, ~~and as a result we've dismissed Paul Jacobson~~" *though he declined to give specific results for the unit.* ~~Paul~~ Jacobson~~, who~~ was the head of the North American fixed-income sales busi-

ness, *resigned late last year, the company said.*

*Id.* (altered to illustrate textual differences between Articles One and Two).

**6.** *See* Defendants' Responses and Objections to Plaintiff's First Request for Admissions ("Def.'s Responses") no. 44.

**7.** *See id.* no. 22.

**8.** 28 U.S.C. § 1781.

**9.** "In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence—(a) under the law of the State of execution [here Germany]; or (b) under the law of the State of origin [here the United States]." *Id.* (Art. 11). The record

questions about the March 3 interview.[10]

Recognizing the import of Mr. Reuter's testimony, Mr. Jacobson promptly challenged this assertion of privilege in the Frankfurt District Court. *See* Letter from James A. Batson dated December 20, 2000. On May 18, 2001, the Frankfurt District Court issued an order upholding Mr. Reuter's assertion of privilege. *See* Letter from James A. Batson dated June 14, 2001. Mr. Jacobson unsuccessfully appealed the District Court's decision, and no further appeals are permitted. *See* Letter from James A. Batson dated December 14, 2001.

## DISCUSSION

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56(c) on the ground that Mr. Jacobson has not proffered any competent evidence that Mr. Breuer actually uttered the allegedly defamatory statements at issue, an element of a prima facie case for defamation. As defendants are clearly correct on this point, we grant summary judgment[11] in their favor.[12] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial."); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence to defeat motion for summary judgment and cannot solely discredit defendant's evidence).

## A. Elements of a Claim for Defamation

As this is a diversity action, *see* Compl. ¶ 6, Mr. Jacobson's claim for defamation is governed by the substantive tort law of New York. The elements of a defamation claim in New York are fourfold: (1) a false and defamatory statement of and concerning the plaintiff uttered by the defendant; (2) publication by the defendant of such statement to a third party; (3) fault on the part of the defendant; and (4) injury to the plaintiff. *See Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993). For present purposes, we focus on the first and most fundamental element—that a statement was actually uttered. If, as defendants argue, Mr. Jacobson cannot proffer any admissible evidence that would establish this element, we must grant summary judgment to defendants. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 924 (2d Cir.1985) (absent a showing that admissible evidence will be available at trial, non-

---

indicates that Mr. Reuter asserted a privilege under § 383 of the German civil procedure statute, the Zivilprozeßordnung. *See* Letter from James A. Batson dated October 18, 2000, at 3.

**10.** Mr. Reuter testified as to his general style of interviewing and preparing articles for publication. *See* Pl.'s Mem. at 10–11. He steadfastly refused, however, to answer any questions with respect to any statements uttered by Mr. Breuer during the March 3 interview. *E.g.,* Reuter Oct. Dep. at 12:7. At a subsequent judicial deposition, Mr. Reuter again invoked his privilege against testifying

about the March 3 interview. *E.g.,* Transcript of April 21, 2001, Deposition of Wolfgang Johannes Reuter ("Reuter Apr. Dep.") at 19:6–14.

**11.** We apply the familiar summary judgment standard to the present motion. *See, e.g., Pappas v. Giuliani,* 118 F.Supp.2d 433, 436–37 (S.D.N.Y.2000).

**12.** Accordingly, we need not and do not consider any other grounds for summary judgment put forth by defendants.

moving party may not rely on inadmissible hearsay in opposing motion for summary judgment).

## B. Article One is the Only Evidence Tending to Show that Mr. Breuer Uttered the Allegedly Defamatory Statements

Plaintiff has been unable to identify anyone who heard any part of the March 3 interview apart from Mr. Breuer, Mr. Reuter, and Mr. Hartwig. Both Mr. Breuer and Mr. Hartwig deny that Mr. Breuer uttered the allegedly defamatory statements at issue. Mr. Reuter's testimony as to what Mr. Breuer said during the March 3 interview is unavailable as he has successfully invoked a privilege against testifying. As such, the only evidence tending to show that Mr. Breuer actually made the statements attributed to him in Article One is Article One itself.[13]

## C. Article One is Hearsay.

■ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Here, Mr. Jacobson offers Article One, an out-of-court statement made by Mr. Reuter,[14] to

prove the fact that Mr. Breuer made the statements attributed to him therein. As such, Article One is clearly hearsay.[15] *See, e.g., Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir.1997); *McAllister v. New York City Police Dep't,* 49 F.Supp.2d 688, 706 n. 12 (S.D.N.Y.1999); *Ladner v. City of New York,* 20 F.Supp.2d 509, 519 (E.D.N.Y.1998). Therefore, unless one of the hearsay exceptions contained in the Federal Rules of Evidence requires a different result, Article One is not admissible to prove that Mr. Breuer made the statements at issue. Fed.R.Evid. 802.

## D. No Hearsay Exception Permits the Admission of Article One

Mr. Jacobson petitions us to admit Article One to prove that Mr. Breuer uttered the allegedly defamatory statements at issue despite its status as hearsay. He relies on both the residual and recorded recollection exceptions to the hearsay rule. Fed.R.Evid. 807, 803(5). We are not persuaded, however, by either argument.

### 1. Residual Exception

■ The residual exception to the hearsay rule provides, in pertinent part:

> A statement not specifically covered by Rule 803 or 804 but having equivalent

**13.** While acknowledging that his evidence consists "largely" of the Bloomberg articles, Mr. Jacobson offers one other piece of evidence tending to show that Mr. Breuer actually uttered the statements at issue. Pl.'s Opp. at 6 & n.12. Mr. Jacobson states that he "had a conversation with Ken Kohn ('Kohn'), an editor at Bloomberg, in which Kohn told Jacobson that he would investigate [Article One] and call him back if Bloomberg determined that it had misquoted Breuer. Jacobson never heard back from Kohn." *Id.* at 6 n. 12. It is undisputed, however, that Mr. Kohn was not present at the March 3 interview. Accordingly, whether or not he returned Mr. Jacobson's telephone call, Mr. Kohn clearly lacks personal knowledge as to what Mr. Breuer said (or did not say) during the March 3 interview,

and plaintiff has not even offered hearsay testimony from Mr. Kohn.

**14.** Mr. Reuter testified that he is the author of Article One. Reuter Dep. at 13:12–14:8.

**15.** We note that, for present purposes, Article One constitutes only hearsay, rather than double hearsay, because Mr. Jacobson seeks only to prove that the statements at issue were actually made, not that they were truthful. *See generally* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 801.11[c] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.2002) (citing *Luster v. Retail Credit Co.,* 575 F.2d 609, 615 (8th Cir.1978)).

circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

*Id.* at 807. Thus, for Article One to be admitted under this exception, we must find that it has "equivalent circumstantial guarantees of trustworthiness" comparable to those exceptions specifically enumerated by the Federal Rules of Evidence. *Id.;* *see also* Fed.R.Evid. 803 (hearsay exceptions that do not depend on the declarant's availability to testify); Fed.R.Evid. 804 (hearsay exceptions that require that the declarant be unavailable to testify). As "[n]ews accounts, unsupported by corroborating evidence and offered to prove that certain statements were made, will usually lack the 'circumstantial guarantees of trustworthiness' that Rule [807][16] requires," Mr. Jacobson bears the burden[17] of demonstrating why Article One is an especially trustworthy news article before we will admit it under Rule 807. *In re Columbia Sec. Litig.,* 155 F.R.D. 466, 475 (S.D.N.Y.1994).

First, Mr. Jacobson analogizes the present circumstances to *Dallas County v. Commercial Union Assurance Co.,* 286 F.2d 388 (5th Cir.1961). The *Dallas County* Court, after acknowledging that "a newspaper article is hearsay, and in almost all circumstances is inadmissible," admit-

ted a half-century old newspaper account of a courthouse fire because the circumstances surrounding the article indicated its trustworthiness. *Id.* at 392. In the sagacious words of Judge Wisdom,

it is inconceivable ... that a newspaper reporter in a small town would report there was a fire in the dome of the new courthouse—if there had been no fire. [The reporter] is without motive to falsify, and a false report would have subjected the newspaper and him to embarrassment in the community. The usual dangers inherent in hearsay evidence, such as lack of memory, faulty narration, intent to influence the court proceedings, and plain lack of truthfulness are not present here.

*Id.* at 397. The present case, however, is clearly distinguishable from *Dallas County.*

The difference between the hearsay evidence offered in case at bar and *Dallas County* becomes evident when we recall that the Second Circuit has instructed us to analyze the trustworthiness of a piece of evidence offered under the residual exception with respect to whether, and to what extent, it minimizes the "four classic hearsay dangers," namely, insincerity, faulty perception, faulty memory, and faulty narration. *Schering Corp. v. Pfizer, Inc.,* 189 F.3d 218, 232–33 (2d Cir.1999) (citing, *inter alia,* Laurence H. Tribe, *Triangulating Hearsay,* 87 Harv. L.Rev. 957, 961 (1974)). Following *Schering,* we are obliged to look closely at the proposition for which hearsay evidence is being offered. In *Dallas County,* the proponent of the newspaper article was merely trying to prove that there had been a fire in the county courthouse nearly sixty years previously. *Dal-*

---

**16.** Rule 807 replaced former Rules 803(27) and 804(b)(5) in 1997.

**17.** As Mr. Jacobson is the party offering Article One into evidence, it is his burden to establish its admissibility. *Cf. United States v.*

*Washington,* 106 F.3d 983, 1001–02 (D.C.Cir. 1997) (in appeal of conviction, placing "heavy burden" of demonstrating admissibility under residual hearsay exception on defendant-appellant offering evidence in question).

*las County* concerned what might be called a "binary event"—either there was a fire, or there was not.[18] The specifics of the temperature of the fire, exactly what time it started, et cetera, were not relevant to the case at hand. Thus, the binary nature of the proposition to be proved in *Dallas County* itself provides a "circumstantial guarantee[ ] of trustworthiness," because even if the author's perception, memory, or narration (three of the four classic hearsay dangers) were less than perfect, it truly is "inconceivable" that he would have misreported the simple occurrence of a fire in the courthouse. *Dallas County*, 286 F.2d at 397.[19]

Whereas the proponent in *Dallas County* sought to prove a simple "binary" proposition, Mr. Jacobson seeks to prove that Mr. Breuer uttered certain specific statements at a specific time. We face a situation where every word, their placement, order, and translations from German to English, are highly relevant to Mr. Jacobson's defamation suit.[20] As Mr. Jacobson's case truly rises and falls on the details, the classic hearsay dangers of faulty perception, memory, and narration are inherent. Accordingly, Mr. Jacobson has failed to convince us that Article One is sufficiently trustworthy to be admitted as evidence that Mr. Breuer actually uttered the statements quoted therein.

Mr. Jacobson next argues that the process used by Mr. Reuter in writing articles for Bloomberg provides the circumstantial guarantee of trustworthiness required by Fed.R.Evid. 807. Pl.'s Opp. at 10–11. Mr. Jacobson points to the undisputed facts that Mr. Reuter is fluent in English and German, that he understands the meaning of quotation marks, that he normally writes down quotations from an interview "in a quiet moment" following the interview, that he always writes in English, and that he and at least one editor read every article he writes before publication. *Id.* This process, however, is fundamentally typical of journalists everywhere, and thus provides no support for Mr. Jacobson's contention that Article One is more trustworthy than the average news account.

Finally, Mr. Jacobson baldly asserts that we should admit Article One because, despite his diligent efforts, it is the only evidence available to him to prove his claim. Pl.'s Opp. at 11–12. In a civil case, however, necessity alone will not render hearsay admissible under the residual exception.[21] Such a rule would eviscerate the hearsay rule and, as such, we reject it.[22]

## 2. Recorded Recollection

■ Mr. Jacobson also argues that Article One should be admitted as the record-

**18.** "Binary" is defined, *inter alia,* as "involving a choice or condition of two alternatives (as on-off or yes-no)." *Merriam–Webster's Collegiate Dictionary* 114 (10th ed.1998). One common example of a binary event is pregnancy.

**19.** We observe in passing that the article at issue in *Dallas County* would be admissible under the current Federal Rules of Evidence as an "ancient document," as it had been "in existence twenty years or more," assuming the plaintiff could authenticate it as a true copy of the Morning Times of Selma for June 9, 1901. Fed.R.Evid. 803(15).

**20.** *See* note 5, *supra* (demonstrating how minor changes in Article One's quotations of Mr. Breuer neutralize the allegedly defamatory nature of his statements).

**21.** Constitutional due process, not relevant here, come into play in criminal cases. *See Weinstein's Federal Evidence* § 807.03[2][b] & n. 17 ("a refusal to admit hearsay evidence offered on behalf of a criminal defendant might amount to a denial of due process, especially if the declarant is unavailable and the evidence is reasonably reliable").

**22.** Apart from *Dallas County,* the only case brought to our attention by Mr. Jacobson with

ed recollection of Mr. Reuter. *See* Fed. R.Evid. 803(5) (providing for the admissibility of a "memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly"). A necessary predicate of this Rule, however, is that there be a "witness" with an "insufficient recollection." *Id.* Here, there is no failure of recollection, but rather an assertion of privilege, that renders Mr. Reuter's testimony regarding the March 3 interview unavailable. As such, we cannot admit Article One as a recorded recollection under Fed.R.Evid. 803(5).[23]

### CONCLUSION

As the preceding discussion makes clear, Mr. Jacobson cannot put forth any admissible evidence on an essential element of his claim, namely, that the allegedly defamatory statements were actually uttered. Accordingly, we grant summary judgment to defendants, and respectfully request the Clerk to close this matter.

respect to the residual exception is *In re Columbia Sec. Litig.* ... In that case, Judge Sand admitted a magazine article and a Reuters release offered to prove that certain statements were uttered, but only because adequate "circumstantial guarantees of trustworthiness" were present: One reporter was available to testify at trial, her contemporaneous notes that provide the basis of the article were to be offered into evidence, a defendant admitted that another article was accurate, and that defendant was available to testify at trial. *Id.*, 155 F.R.D. at 475–479. As none of this circumstantial evidence is present in the case at bar, we find *In·re Columbia Sec. Litig.* to be inapposite.

23. Finally, Mr. Jacobson argues that Article Two and part of Article One are admissible as adoptive admissions under Federal Rule of Evidence 801(d)(2)(B). Pl.'s Opp. at 8 & n. 14. Whatever the merits of this argument, they do not apply to any of the allegedly defamatory statements at issue, as all of those statements were removed in the editing process from Article One to Article Two. *See* note 5, *supra.*